HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOUSING AUTHORITY OF SNOHOMISH COUNTY,<br><br>            Plaintiff,<br><br>     v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al.,<br><br>            Defendants. | CASE NO. C13-1791RAJ<br><br>ORDER |

## I.  INTRODUCTION

This matter comes before the court on the parties' cross-motions for summary judgment.  Plaintiff, the Housing Authority of Snohomish County ("HASCO"), requested oral argument; Defendants, the United States Department of Housing and Urban Development and its Secretary (collectively "HUD"), did not.  The court finds oral argument unnecessary.  For the reasons stated herein, the court GRANTS HASCO's motion (Dkt. # 11) to the extent stated in this order, and DENIES HUD's motion (Dkt. # 13).  HUD must make a new decision as to HASCO's application to dispose of its public housing units.  The parties must submit a joint statement no later than September 15, 2014 as to their preferences for the disposition of this civil action.

## II.  BACKGROUND

HASCO is a "public housing agency" ("PHA") within the meaning of the United States Housing Act of 1937 ("Housing Act"), which is codified along with amendments

ORDER – 1

beginning at 42 U.S.C. § 1437.  HASCO administers more than 5,000 housing units through a variety of programs, including the Section 8 Housing Choice Program, in which qualified persons receive vouchers that they use to subsidize market-rate rentals of privately-owned housing.  HASCO administers just 210 units of "public housing," which are units that HASCO owns and manages with subsidies from the federal government.  HUD administers those federal subsidies.  HASCO's 210 public housing units are in 14 geographically dispersed properties with as many as 30 and as few as 2 units.  Administrative Record ("AR," Dkt. # 7) at 18, 206.

In July 2011, HASCO filed an application with HUD to "dispose" of its 210 public housing units.  "Disposition" is a term of art in the Housing Act that describes the sale or other transfer of public housing from the public housing program.  42 U.S.C. § 1437p; 24 C.F.R. § 970.5 (defining "Disposition").  HASCO's plan is to lease its 210 units to a nonprofit affiliate who would operate the units as low-income housing.  The residents of the units would receive Section 8 vouchers, allowing them to stay in their home or seek other housing.  HASCO planned to use proceeds of the disposition to perform capital improvements and maintenance on the 210 units and to acquire an additional 46-unit building to use for low-income housing.  AR 18-20.  HASCO offered a host of reasons for disposition in its application to HUD.  It explained that the disposition would offer greater housing choice to is public housing residents, and that residents supported the proposed disposition.  AR 20, 69-70.  It explained that the disposition would help it deconcentrate poverty in its jurisdiction.  AR 19.  It emphasized that the proceeds of the disposition would allow it to buy additional low-income housing.  AR 20-21.  It also stated that under the financing structure applicable to public housing, it could not meet its projected capital needs at the 210 units over the next 20 years.  AR 18-20

HUD denied HASCO's disposition application in February 2012, again in July 2012 after HASCO requested reconsideration, and a third time November 2012 after HASCO requested reconsideration again.  AR 202-203, 370-72, 470-71.  Each time HUD

ORDER – 2

denied HASCO's application, it focused on one issue: whether HASCO had sufficient funds for capital improvements and maintenance at the 210 units with its existing income and federal subsidies. AR 202 ("Specifically, the HASCO certified that it does not have the resources necessary to address capital needs with its existing HUD subsidies."), 372 ("Specifically, the size of the operating deficit combined with the lack of significant capital needs does not justify disposition."), 470 ("The Department . . . has determined that all the information [HASCO provided] remain inadequate to justify the disposition . . . ."). HUD did not address HASCO's assertion that the disposition would allow it to acquire more low-income housing. HUD did not address HASCO's assertion that the disposition would benefit the residents of the 210 units.

HASCO sued, invoking the judicial review provisions of the Administrative Procedures Act ("APA," 5 U.S.C. §§ 701-706). It contends that HUD erred at the threshold by disregarding the duties that the Housing Act imposes on HUD in approving disposition requests. In its view, HUD's singular focus on HASCO's capital needs and resources at the 210 units is itself a violation of the Housing Act, regardless of whether its substantive determination that HASCO had adequate resources to meet its capital needs was correct. It also contends that the substantive determination was erroneous. It asks the court to do what HUD would not – grant its disposition application. HUD, for its part, contends that it both followed the Housing Act and that the court can set aside its denial of HASCO's disposition application only if it acted arbitrarily and capriciously, which it did not. The parties' cross-motions for summary judgment express their disparate views, and the court now resolves them.

### III.   ANALYSIS

**A.   HUD "Shall Approve" a Disposition Application If a PHA Makes Certain Certifications, and "Shall Disapprove" It If HUD Has Information That Is "Clearly Inconsistent" With Those Certifications.**

Section 1437p of the Housing Act establishes HUD's duties in reviewing a disposition application in two subsections. Subsection (a) mandates that HUD "shall

ORDER – 3

approve" a disposition application if a PHA makes a series of certifications described in the statute. Eliminating the certifications that do not apply to the disposition of dwelling units, the statutory certifications are as follows:

1) that keeping the property *is not* in the "best interests of the residents or the public housing agency," § 1473p(a)(2)(A), *or* that disposing of the property *is* in the "bests interests of the residents and the public housing agency, § 1437p(a)(2)(B);

2) that the PHA's agency plan authorizes the disposition, § 1437p(a)(3);

3) that the PHA has given residents advance notice of the disposition and advised the residents of its plan to provide them with comparable housing, relocation expenses, and other resources, § 1437p(a)(4);

4) that the "net proceeds" of the disposition will be used first to retire debt associated with construction or improvement of the public housing and then for the benefit of the PHA's residents, § 1437p(a)(5); and

5) that the PHA has, in "appropriate circumstances," offered to sell the property to resident organizations. § 1437p(a)(6).

But just as HUD "shall approve" a disposition application containing the required certifications, it "shall disapprove" a disposition application if it makes one of the following determinations:

1) that "any certification" made by the PHA as described above is "clearly inconsistent with information and data available to [HUD] or information or data requested by [HUD]," § 1437p(b)(1); or

2) that the application was not developed in appropriate consultation with residents and "appropriate government officials," § 1437p(b)(2).

This dispute focuses on whether HUD had information that was "clearly inconsistent" with the first of the certifications described above. The parties raise no dispute about the other certifications. HUD does not contest that HASCO took

ORDER – 4

appropriate steps to inform residents of the impact of the proposed disposition, that it consulted appropriately with residents, that it consulted appropriately with local governments, and so on. HUD Mot. at 5 (Dkt. # 13) ("The other required certifications are not at issue.").

The certification in dispute, codified at § 1437p(a)(2), can take two alternative forms, both of which depend on the "best interests" of the residents and the public housing agency. § 1437p(a)(2)(A)(ii) & (B)(i). The first best-interests certification alternative permits a best-interests certification where the "disposition allows the acquisition, development, or rehabilitation of other properties that will be more efficiently or effectively operated as low-income housing." § 1437p(a)(2)(A)(ii). The second best-interests certification is more complex, allowing certification where the disposition is in the best interests of residents and the PHA, is consistent with the goals of the PHA and its plan, and is otherwise consistent with the Housing Act. § 1437p(a)(2)(B)(i)-(iii).

Before considering the parties' dispute over HASCO's best-interests certification, the court considers what role the APA gives the court in resolving that dispute.

**B.      Standard of Review**

The APA does not permit plenary judicial review of an agency decision. A court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The parties diverge sharply about what that limited scope of review means in this case. HUD insists that the court can take action only if it were to find that its conclusion that HASCO had adequate resources to meet its capital needs at the 210 units was arbitrary or capricious. HASCO invites the court to sidestep § 706(2)(A) entirely, and instead exercise its authority to "compel agency action unlawfully withheld," in accordance with § 706(1). In HASCO's view, it made the required statutory certifications, HUD did not conclude otherwise, and thus HUD "unlawfully withheld" approval of the disposition application.

ORDER – 5

Neither party's selective reading of the APA convinces the court.  HASCO's effort to cast disposition approval as HUD's mandatory duty ignores that HUD's duty to disapprove dispositions is no less mandatory.  Here, the parties have a dispute about whether HUD had a sufficient basis to carry out its duty to disapprove, a dispute that requires the court to examine HUD's decision.  But HUD is mistaken as well to the extent it suggests that the APA permits a court to set aside agency action only when the agency acted arbitrarily or capriciously.  The APA also permits a court to set aside actions that are an "abuse of discretion" or are "otherwise not in accordance with the law."  It is these latter aspects of § 706(2)(A) of the APA that are ultimately fatal to HUD's decision on HASCO's disposition application.

The parties raise their APA disputes in summary judgment motions, which require the court to draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving purely legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).  APA disputes are often amenable to summary judgment, either because they turn on purely legal questions, or because the court typically makes no finding of fact in determining if an agency's decision is arbitrary or capricious.  *Rijal v. USCIS*, 772 F. Supp. 2d 1339, 1344 (W.D. Wash. 2011), *aff'd & adopted by* 683 F.3d 1030 (9th Cir. 2012);

ORDER – 6

### C. HUD's Denial of HASCO's Disposition Application Violated § 1437p, HUD Regulations, and the APA.

HUD violated the Housing Act when it based its denial of HASCO's disposition application solely on its belief that it had data that was "clearly inconsistent" with HASCO's statements that its could not meet its capital needs while maintaining the 210 units as public housing. HUD treated HASCO's opinion to the contrary as a "certification" within the meaning of § 1437p, which is contrary to the plain language of the statute and the regulations HUD adopted to implement it.[1]

#### 1. HASCO's Statement About Its Ability to Meet Its Capital Needs Was Not a "Certification" Within the Meaning of § 1437p.

In relevant part, § 1437p(b) permits disapproval "of an application submitted under subsection (a) of this section" when HUD determines that "any certification made by the public housing agency *under that subsection* is clearly inconsistent with information and data available to" HUD. § 1437p(b)(1) (emphasis added). HUD prefers to emphasize the statute's reference to "any certification," suggesting that this means that literally "any certification" made as part of a disposition application is a potential ground for HUD to disapprove of the application. Were that the case, Congress would have permitted HUD to disapprove an application based on "any statement" within a disposition application. Congress did not; it plainly required HUD to focus solely on the certifications mandated in § 1437p(a). The court cannot accept HUD's view, which contradicts the unambiguous command of the statute. *See Mont. Consumer Counsel v. FERC*, 659 F.3d 910, 915-16 (9th Cir. 2011) (noting that deference to agency's construction of the law it is charged with administering cannot countenance violation of an "unambiguous command of Congress"). For the same reason, the court cannot accept HUD's view that HASCO's capital needs assessment was a "certification" within the meaning of § 1437p merely because it appeared in HASCO's disposition application in a

---

[1] HASCO invites the court to consider, in addition to the plain meaning of the statute, its view that Congress amended § 1437p in 1989 with the intent of giving HUD only limited control over disposition applications. The court need not consider congressional intent in this case, because the command of § 1437p is apparent from the text of the statute.

ORDER – 7

section HASCO entitled "Section 18 Certification."  AR 18.  Whether HASCO made a "certification" in the ordinary sense of the word is irrelevant; "certification" is a term of art in § 1437p.  HUD could disapprove HASCO's disposition application only if it had information that was "clearly inconsistent" with one of the certifications enumerated in § 1437p(a).

HUD's regulations, like the statute that they supplement, make clear that it can disapprove a disposition application only based on specific "certifications."  Congress authorized HUD's Secretary to issue "rules and regulations as may be necessary to carry out his functions, powers, and duties."  42 U.S.C. § 3535.  The Secretary's regulations governing disposition are at 24 C.F.R. Part 970.  There, the Secretary declared HUD's authority to disapprove a disposition application if "[a]ny certification made by the PHA *under this part* is clearly inconsistent with," among other things, "information and data available to HUD related to the requirements of this part," including "failure to meet the requirements for the justification for . . . disposition" as found elsewhere in Part 970.  24 C.F.R. § 970.29(a) (emphasis added).  The regulations require several "certifications," almost all of which are materially identical to the "certifications" listed in § 1437p(a).  They include, as applicable to the disposition of dwelling units, a certification "that the retention of the property is not in the best interests of the residents or the PHA for at least one of three reasons," with three enumerated reasons that track the language of 42 U.S.C. § 1437p(a)(2).  They also include a few certifications that HUD describes as "[g]eneral requirements" for a disposition application.  24 C.F.R. § 970.7(1) (requiring a "certification that the PHA has described the demolition or disposition in the PHA Annual Plan . . ."), § 970.7(16) (requiring a "certification that the . . . disposition application does not violate any remedial civil rights order or agreement . . . or other court order or agreement."

Absent from both § 1437p and the regulations that implement it is any requirement that a PHA certify that it has inadequate resources to meet capital needs at public housing

ORDER – 8

units that it proposes to dispose of. HUD's disapproval letters, however, leave the court with no choice but to conclude that it denied HASCO's disposition application solely because it believed it had information that was clearly inconsistent with a HASCO's "certification" that it could not meet capital needs at the 210 units. That was error.

### 2. HUD Erred By Failing to Show that It Had Data That Was "Clearly Inconsistent" With HASCO's Two Best-Interests Certifications.

To distinguish between a "certification" that can support the approval or disapproval of a disposition application and any other statement that appears in an application is not an exercise in judicial nitpicking. Congress reduced the considerations underlying approval or disapproval of a disposition application to just a few statutory certifications. And, because no one argues that HUD's regulations are in excess of its statutory power, the court assumes that HUD permissibly used its regulatory power to add a few certifications to the list. HUD's approach in this case, so far as the administrative record reflects, was to focus exclusively or nearly so on HASCO's ability to meet its capital needs. To the extent a comparison of capital needs to resources is relevant, it is relevant to the second of the best-interests certification alternatives, the one codified at § 1437p(a)(2)(B) and 24 C.F.R. § 970.17(c). But that version of the "best interests" certification is not a certification that the disposition is necessary, or even advisable, to help the PHA meet its capital needs. Instead, it is a holistic certification that takes into account the broader interests of residents, the broader goals of the PHA, and the broader aims of the Housing Act. § 1437p(a)(2)(B)(i)-(iii). HUD ignored these broader considerations, and thus violated the law.

HUD also violated the law by failing to consider HASCO's alternative best-interests certification. HASCO certified that the disposition would be used to purchase an additional 46 units of low-income housing. AR 20-21. That certification tracks the best-interests certification alternative codified at § 1437p(a)(2)(A)(ii) and 24 C.F.R. § 970.17(b), which applies to dispositions that allow "the acquisition, development, or

ORDER – 9

rehabilitation of other properties that will be more efficiently or effectively operated as low-income housing." HASCO did not place an "X" on its disposition application next to the "Replacement Housing" heading that corresponds directly to this version of the best-interests certification, AR 17, but that did not permit HUD to ignore it. This is particularly so where HASCO's first reconsideration request emphasized its intent to acquire the 46 units with the proceeds of its disposition, and emphasized that "[e]ither of these proposed initiatives" (the acquisition of the 46 units or the proposal to use disposition proceeds to renovate the 210 public housing units) is a sufficient basis" for a best-interests certification. AR 206 (emphasis in original). When HUD declined to address the acquisition of the 46 units, it violated the law.

The effect of HUD's tunnel vision, its singular focus on HASCO's capital needs and resources with respect to the 210 public housing units, was to leave the court with no basis to conclude that HUD even considered these broader aims. Despite a year and a half of wrangling between HASCO's initial application and HUD's final denial of its reconsideration requests, neither HASCO nor the court can ascertain whether HUD has any information that is "clearly inconsistent" with a statutorily-required certification.

HUD's failure to follow its statutory and regulatory mandate has two consequences. Neither HASCO nor the court has any idea if HUD has information that is "clearly inconsistent" with the alternative certification of § 1437p(a)(2)(A)(ii) – that disposition will allow the "acquisition, development, or rehabilitation of other properties that will be more efficiently or effectively operated as low-income housing." That certification, by itself, is sufficient to satisfy § 1437p(a)(2), regardless of HASCO's capital needs or resources. HUD ignored it. Putting that aside, neither the court nor HASCO can tell if HUD believed that it had information that was "clearly inconsistent" with HASCO's certification that disposition was in the best interests of HASCO and its residents and was consistent with HASCO's goals and the goals of the Fair Housing Act, as described in § 1437p(a)(2)(B).

ORDER – 10

HUD's failure to follow its statutory and regulatory mandate means that it violated the APA. When an agency makes a decision "based on an improper understanding of the law," it commits an abuse of discretion in violation of 5 U.S.C. § 706(2)(A). *Kazarian v. USCIS*, 596 F.3d 1115, 1118 (9th Cir. 2010); *see also Motor Vehicles Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) (holding that an agency action is "[n]ormally" considered "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, [or] entirely failed to consider an important aspect of the problem").

### D. The Court Will Not Decide Whether to Set Aside HUD's Determination that It Had Information That Was "Clearly Inconsistent" with HASCO's Comparison of Its Capital Needs to Its Resources.

The court declines to resolve the parties' dispute about whether the court can cast aside HUD's determination that it has data clearly inconsistent with HASCO's assessment of its capital needs and resources. First, it is not clear that the determination will make any difference. As the court has noted, one of the paths to the best-interests certification that § 1437p(a)(2) requires is to certify that disposition will permit the "acquisition, development, or rehabilitation of other properties that will be more efficiently or effectively operated as low-income housing." § 1437p(a)(2)(A). HASCO can, so far as the court can ascertain, make that certification regardless of its ability to meet capital needs at the 210 units. Putting that aside, it is not clear that HUD, were it to properly consider the broader aims of the best-interests certification alternative at § 1437p(a)(2)(B), would attempt to base a denial of HASCO's disposition application on its statements about its capital needs. In short, the likelihood that HUD will, upon considering HASCO's application in accordance with § 1437p, reach a decision that does not implicate the parties' capital needs dispute, is sufficiently strong that the court declines to address the minute details of that dispute.

In the interest of efficient resolution of this protracted dispute, however, the court resolves the parties' dispute about the standard of review that would apply if the court

ORDER – 11

were to review a decision that HUD had information "clearly inconsistent" with one of HASCO's certifications. HASCO argues that the court itself would decide if the information was "clearly inconsistent," whereas HUD argues that the deferential review inherent in the APA effectively obliterates the "clearly inconsistent" standard for purposes of judicial review. The answer is somewhere in the middle. When a court reviews the substance of an agency decision (as opposed to whether the agency complied with the law, or abused its discretion), it can overturn that decision only if it is "arbitrary and capricious." 5 U.S.C. § 706(2)(A); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 841 (9th Cir. 2003). The court reviews the agency's decision to determine if it "considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Id.* The court does not "substitute [its] judgment for that of the agency," *id.*, it merely determines whether any rational adjudicator could have reached the decision that the agency reached. *Rijal v. USCIS*, 772 F. Supp. 2d at 1345-46. But in making that determination, the court must take guidance from a statute circumscribing the agency's power. In this case, HUD could deny a disposition application only if it had information that was "clearly inconsistent" with a required certification. A court determining whether a denial was arbitrary or capricious would thus consider whether any rational adjudicator could have determined that HUD's information was "clearly inconsistent" with a required certification.[2]

### E.     Remand Is the Proper Remedy for HUD's Violation.

HASCO urges the court to either grant HASCO's disposition application itself or order HUD to do so. It implicitly suggests that the court conclude that HUD's silence as to the certifications on which it could permissibly base a denial of the disposition

---

[2] HUD cites *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1 (1st Cir. 2013), which is, so far as the court is aware, the sole appellate authority considering an APA challenge to a HUD decision on a § 1437p application. There, however, the court considered a challenged to HUD's *approval* of a § 1437p application to demolish a public housing property. *Id.* at 10. The court's discussion of the APA challenge was brief. It affirmed HUD's approval of the demolition, and it could not have done otherwise unless it concluded that every rational adjudicator would have concluded that HUD had evidence that was "clearly inconsistent" with a § 1437p(a) certification.

ORDER – 12

1   application are equivalent to an admission that it has no data that is clearly inconsistent
2   with those certifications.  That idea is not outlandish; it is reasonable to hope that HUD
3   would address each of the statutory and regulatory certifications when it denies a
4   disposition application.  Nothing in the statute or regulations, however, mandates that
5   approach.  HUD can base its denial on information that is clearly inconsistent with even a
6   single certification, even if that approach is inefficient.

As a general rule, a district court should not make decisions that have been delegated to an agency.  *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed [under the APA] and to reach its own conclusions based on such inquiry.").  A court can grant relief where the record clearly mandates it, but this is not such a case.  It is possible, for example, that HUD has data that is "clearly inconsistent" with HASCO's projections as to its ability to use to proceeds of the disposition to expand the number of units of low-income housing.  *Cal. Energy Commission v. DOE*, 585 F.3d 1143, 1154 (9th Cir. 2009) (concluding that the court's "role is not to engage in the underlying analysis to determine whether the statutory criteria are met, even if the [applying party] might have supplied the [agency] with sufficient information to do so").  That seems unlikely to the court, but the administrative record is so focused on the parties' dispute over capital needs that the court cannot say with certainty.  It is also possible that HUD could explain how its disagreement about HASCO's ability to meet its capital needs so undermines HASCO's best-interests certification that it warrants a denial of the application.  HUD (and HASCO for that matter) have institutional expertise with respect to the issues underlying this disposition that the court cannot duplicate.  *See Cal. Energy Commission*, 585 F.3d at 1155 (remanding where issues remaining for resolution "require factual findings in the [agency]'s area of expertise").  The proper course in this case is to remand.  *Lorion,* 470 U.S. at 744 (noting that remand for a new decision is

ORDER – 13

appropriate "if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it").

Before remanding, however, the court requires the parties' input on their preferred disposition of this suit. There are at least two possibilities. First, the court could enter judgment in favor of HASCO and remand to HUD with instructions to issue a decision on HASCO's disposition application in accordance with this order. Second, the court could stay this action for the purpose of allowing HUD to make a new determination, and could conduct additional proceedings depending on whether HASCO wishes to challenge that new determination. The court suggests no preference between these alternatives (or any others that the parties may propose), it merely prefers to implement whatever disposition is consistent both with this order and efficiently resolving the parties' underlying dispute. The parties shall submit a joint statement addressing this issue no later than September 15, 2014.

### IV.  CONCLUSION

For the reasons previously stated, the court GRANTS HASCO's summary judgment motion (Dkt. # 11) to the extent stated in this order, and DENIES HUD's cross-motion (Dkt. # 13). HUD must make a new decision as to HASCO's application to dispose of its public housing units. The parties must submit a joint statement no later than September 15, 2014 as to their preferences for the disposition of this civil action.

DATED this 2nd day of September, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 14